# CASES

## DETERMINED IN THE

# Supreme Court of Judicature,

### OF THE

## STATE OF NEW JERSEY,

### AT SEPTEMBER TERM, 1824.

---

THE STATE BANK AT ELIZABETH *against* WILLIAM CHET-WOOD.*

1. In an action of debt on bond, the Defendant after craving oyer and setting out the bond which recites that " E. B. D. is cashier ;" is estopped from denying that E. B. D. was cashier; he can not admit the deed and at the same time traverse the truth of its contents.

2. The same matter cannot be presented in the double form of a special plea, and also of notice.

3. It was the duty of a Cashier to be sworn before he entered upon the duties of his office, his neglecting to perform that duty will not vitiate his bond, but ought rather to be considered a breach of it.

4 NOTICE—That a bond was never delivered, is bad, for it amounts to the general issue and could not be specially pleaded.

5. The giving of a bond implies that it was required.

6. A party to an instrument can never hold it as an oscrow.

7. There is a difference between the delivery of an instrument and the tender of one.

8. It is no defence upon a Cashier's bond to say that he erred by mistake and not for want of fidelity.

---

*This case partially overruled in the case of State Bank of Trenton *vs.* Evans. [3 Green, p. 133.]

State Bank at Elizabeth *v.* Chetwood.

9. Non damnificatus cannot be pleaded to a condition that is multifarious.

10. The first ten notices in this case are bad.

11. Though the acceptance of a less sum of money could not according to Pinnel's case, be pleaded as a satisfaction of a greater, yet any OTHER THING accepted in satisfaction would be good.

12. The 11th, 12th, 13th, 14th and 15th notices in this case good, and ordered to stand for trial

13. The 16th and 17th notices are bad, the 18th and 19th good.

14. The 20th notice is bad for the continuing the Cashier in office did not heal breaches of an anterior date.

15. The 21st and 22d notices are bad, for there is no necessity that the Plaintiff should give notice when damages accrued.

---

This was an action of debt brought against the defendant as a surety on a bond conditioned for the faithful performance of the duties of a Cashier.* The defendant pleaded (after craving oyer and setting out the bond,) several different pleas, viz :

1. Non est factum.

2. That the Cashier named in the said writing obligatory and condition thereof, well and truly observed, performed and kept all and singular the articles, clauses and agreements in the said condition of the said writing obligatory mentioned in all things therein contained on his part to be performed.

3. That the Cashier rendered a just and true account to the President and Directors of the said State Bank, of all the moneys, securities, stock and other property of the President, Directors and Company which had come to his charge or was committed to his charge, and also of all moneys which were deposited in the said State Bank by any person or persons for safe keeping and did deliver the moneys, securities, stock and other property of the said President, Directors and Company, in hands, together with all documents, instruments of writing, papers and books

---

*See form of the bond, 2 Halsted's Reports 32, Chetwood *ads.* State Bank.

belonging to, or for the use of the President, Directors and Company of the said State Bank, to his successor in office, and did well, honestly and faithfully perform all the duties of the office of Cashier of the said State Bank, and did answer for all improper appropriations, waste, embezzlement or destruction of the said moneys, securities, stock, property, documents, instruments of writing, papers or books, which was done or committed by any person or persons by him employed in the said office.

4. That as to the article, clause or agreement contained in the condition of the said writing obligatory set forth in the plea first above pleaded, that the said E. B. D. (the Cashier) should deliver the moneys, securities, stock and other property of the said President, Directors and Company in hands together with all documents, instruments of writing, papers and books belonging to or for the use of the said President, Directors and Company of the said State Bank to his successor in office, he the said William, saith, that the said E. B. D. after the making of the said writing obligatory, to wit: on the 24th day of February, 1819, to wit: at Newark aforesaid, at the request of the President, Directors and Company of the State Bank at Elizabeth aforesaid, did resign the said office of Cashier, which resignation was then and there accepted by them, and that he the said E. B. D. afterwards to wit : on the same day and year last aforesaid, was ready and willing to deliver all the said moneys, securities, stock and other property of the said President, Directors and Company in hands, together with all the documents, instruments of writing, papers and books belonging to or for the use of the said President, Directors and Company of the said State Bank to his successor in office, and that afterwards to wit: on the same day and year last aforesaid, at the place aforesaid, and before any successor in office was appointed by the President, Directors and Company of the State Bank at Elizabeth aforesaid, they then and there having the power to make such appointment he the said E.

B. D. delivered the same to the President, Directors, &c., &c., aforesaid, in full satisfaction and discharge of all damages for not delivering the same to his successor in office, which was then and there accepted and received by the President, &c., &c., in full satisfaction and discharge of all damages for not delivering the same to his successor in office. And that as to the said clause, article or agreement in the said condition contained that the said E. B. D. should answer for all improper appropriations, waste, embezzlement, or destruction of the said moneys, securities, stock, property, documents, instruments of writing, papers or books, which shall be done or committed by any person or persons, to be by him employed in the said office, he, said William, says, that no improper appropriations, waste, embezzlement or destruction of the said moneys, securities, stock, property, documents, instruments of writing, papers or books, was or were done or committed by any person or persons, by him the said E. B. D. employed in the said office, to wit: at Newark aforesaid. And the said William, as to all the other clauses, articles or agreements in the said writing obligatory contained, saith that the said E. B. D. did from time to time, and at all times after the making of the said writing obligatory, and the condition thereof, so long as he continued in the said office of Cashier in the said condition mentioned render a just and true account to the President, &c., &c., for the time being, of all the moneys, securities, stock and other property of the President, &c., &c., which had come to his hands or was committed to his charge, and also of all moneys which were deposited in the said State Bank by any person or persons for safe keeping, and did well, honestly and faithfully perform all the duties of the office of Cashier of the said Bank, to wit: at Newark aforesaid, and this he is ready to verify, wherefore, &c.

5. That the said E. B. D. named in the said writing obligatory and condition thereof in the plea first above pleaded set forth, after making of the said writing obligatory and

the condition thereof, and before the commencement of this suit, to wit: on the twenty-fourth day of February, 1819, to wit: at Newark, in the said county of Essex, resigned and surrendered up to the President, &c., &c., the said office of Cashier in the said writing obligatory and condition mentioned, and delivered to them all moneys, securities, stock and other property of the said President, &c., &c., in his hands together with all documents, instruments of writing, papers and books, belonging to or for the use of the said President, &c., &c., in full satisfaction and discharge of all damages by reason or means of any article, clause, agreement, matter and thing in the said condition of the said writing obligatory mentioned, which the President, &c., &c., then and there accepted and received in full satisfaction and discharge of all damages by reason or means of any article, clause, or agreement, matter and thing in the said condition of the said writing obligatory mentioned, whereof the said William, being one of the sureties of the said E. B. D., then and there had due notice; and the said William avers that there was no breach of the said condition of which they had not then and there full notice; and thereby he became exonerated from all damages for all breaches of the said condition; and this the said William is ready to verify, &c.

To these pleas the following notices were subjoined:

1. That the defendant will give in evidence on the trial of this cause, under the general issue first above pleaded, the several matters following, that is to say, that E. B. D. named in the said writing obligatory and condition thereof, in the plea first above pleaded set forth was not Cashier of the said State Bank at Elizabeth, in the said writing obligatory and condition mentioned and so was not bound to perform and fulfill the several articles, clauses, agreements, matters and things in the said condition specified.

2. That the said E. B. D. did not before he executed the said writing obligatory take the oath to perform the duties of Cashier of the said State Bank at Elizabeth, prescribed

and required by the act of the Legislature of this State, entitled "an act to establish State Banks in New Jersey." And further that he never did take such oath.

3. That the said writing obligatory and condition thereof, was not required by the Directors of the said State Bank at Elizabeth, as a further security, from the said E. B. D. according to the provision of the act of the Legislature of this State, entitled "an act to establish State Banks in New Jersey."

4. That the said writing obligatory and condition thereof, was never delivered by the said defendant to the plaintiffs.

5. That the said writing obligatory and condition thereof, was delivered by him to the said E. B. D. as an escrow, to be by him kept upon this condition, that is to say, until the President, Directors and Company of the State Bank at Elizabeth aforesaid, accepted and approved thereof by the record of their proceedings; and that the President, &c., &c., did not before the commencement of this suit at any time approve of the said writing obligatory and condition thereof, by the record of their proceedings.

6. That the said writing obligatory and condition thereof was never lawfully accepted and approved by the President, &c., &c., before the commencement of this suit by the record of their proceedings. And further, that the said writing obligatory and condition thereof has never been lawfully accepted or approved by the President, &c., &c., by any entry or minute in writing, entered in their book of minutes or proceedings of their business as a body corporate. And also that no such entry or minute was made during the time the said E. B. D. acted as cashier of the said bank. And also that before the first day of April, 1818, no such entry or minute was made in the record of the proceedings of the President, &c., &c., as a body corporate.

7. That if the President, &c., &c., since the making of the said writing obligatory and condition thereof, hitherto have been injured by the said E. B. D. by reason or means

of the non-performance of any matter, cause or thing in the said condition of the said writing obligatory, mentioned, they were the occasion thereof.

8. That if the plaintiffs have been injured as last aforesaid, they, with the intent to injure and defraud the said William, were the occasion thereof.

9. That if the plaintiffs, since the making of the said writing obligatory and condition thereof, hitherto have been damnified, by reason or means of any matter, cause or thing in the said condition contained, it was through the mistake of the said E. B. D. and not through want of any fidelity on his part.

10. That the plaintiffs have not at any time since the making of the said writing obligatory and condition thereof, hitherto been in any wise damnified, by reason or means of any matter, cause or thing in the condition of the said writing obligatory mentioned.

11. That after the making of the said writing obligatory and condition thereof, and before the commencement of this suit, the said E. B. D. therein mentioned, resigned the said office of cashier to the plaintiffs and delivered to a committee of the Directors of the said bank authorized and empowered for that purpose by the plaintiffs, all the moneys, securities, stock and other property in his hands as cashier of the said bank, together with all documents, instruments of writing, papers and books belonging to and for the use of the plaintiffs, in full satisfaction and discharge of all damages by reason or means of any matter, cause or thing in the said condition of the said writing obligatory mentioned, which resignation and delivery the plaintiffs accepted and received in full satisfaction and discharge of all damages by reason or means of any matter, cause or thing in the said condition of the said writing obligatory mentioned.

12. That after the making of the said writing obligatory and condition thereof, and before the commencement of this suit, the said E. B. D. therein mentioned, did leave the office

of cashier, the said plaintiffs refusing any longer to employ him therein ; and before any successor in office was appointed the said E. B. D. delivered to L. B., C. H. and J. W., directors of said bank, authorized and empowered for that purpose, the moneys, securities, stock and other property of the plaintiffs in hands, together with all documents, instruments of writing, papers and books belonging to or for the use of the plaintiffs, in full satisfaction and discharge of all damages, by reason or means of all and every agreement, matter and thing in the said condition of the said writing obligatory mentioned, to be done or performed by the said E. B. D. which the L. B., C. H. and J. W., being authorized and empowered for that purpose, then and there accepted and received, for, and on behalf of the plaintiffs in full satisfaction and discharge of all damages, by reason or means of all and every agreement, matter and thing in the said condition of the said writing obligatory mentioned to be done or performed by the said E. B. D.

13. That after the date of the said writing obligatory in the said plea mentioned, and before the commencement of this suit, the plaintiffs forced and obliged the said E. B. D. to quit and leave the office of cashier, without appointing any successor in office, they having the power to make such appointment and took, accepted and received from the said E. B. D. and which he then and there delivered to them, all the moneys, securities, stock and other property in his hands as cashier, together with all documents, instruments of writing, papers and books belonging to, or for the use of the plaintiffs, in full satisfaction and discharge of all damages by reason or means of any article, clause, matter or thing in the condition of the said writing obligatory specified.

14. That he, (the defendant) signed the said writing obligatory with the condition thereof, as one of the sureties of E. B. D. therein mentioned, and that after the date thereof, and before the commencement of this suit, to wit: on the twenty-fourth day of February, 1819; to wit: at Newark

aforesaid, the said E. B. D. resigned and surrendered to the plaintiffs at their special instance and request, the said office of cashier in the said writing obligatory and condition thereof mentioned, which was then and there accepted by them. And that afterwards, to wit: on the same day and year last aforesaid, at the place aforesaid, at their like special instance and request, the said E. B. D. came to an account and settlement with L. B., C. H., and J. W., directors of the said bank, authorized and empowered for that purpose by the plaintiffs, of and concerning all the moneys, securities, stock and other property of the said President, Directors and Company, which had come to his hands as cashier aforesaid, and all documents, instruments of writing, papers and books, belonging to or for the use of the said President, &c., and all the other matters and things in the said condition specified, wherewith the said E. B. D. as cashier aforesaid, was chargeable, or otherwise answerable to the plaintiffs in any way or manner whatever, they the said L. B., C. H., and J. W., then and there having notice of every matter and thing, in the said condition specified, wherewith the said E. B. D. as cashier was chargeable or otherwise answerable to the plaintiffs, and upon such account and settlement, divers moneys, securities, stock and other property of the said President, &c., were then and there found in his hands, as cashier as aforesaid, together with divers documents, instruments of writing, papers and books, belonging to, and for the use of the said President, &c., which included all the matters and things in the said condition of the said writing obligatory specified, wherewith he was then and there chargeable or held answerable to the plaintiffs in any way or manner whatever; except the said E. B. D. had not delivered the said moneys, securities, stock and other property of the said President, &c., so found in his hands as aforesaid, together with all the said documents, instruments of writing, papers and books, belonging to, or for the use of the said President, &c., to his successor in office; and the said E. B.

D. as cashier was not then and there otherwise found in any default whatever. And that afterwards, to wit: on the same day and year last aforesaid, to wit: at Newark aforesaid, the said E. B. D. was ready and willing to deliver the same to his successor in office; and then and there before the appointment of a successor in office by the plaintiffs, they having the power to make such appointment, he the said E. B. D. at the special instance and request of the plaintiffs, and for their use, did deliver to the said L. B., C. H., and J. W., being authorized and empowered for that purpose by the plaintiffs, all the said moneys, securities, stock and other property of the said President, &c., found in his hands as cashier as aforesaid, together with all documents, instruments in writing, papers and books belonging to, and for the use of the said President, &c., in full satisfaction and discharge of all damages by reason or means of any clause, matter or thing in the condition of the said writing obligatory specified which was then and there accepted and received by the said L. B., C. H., and J. W., being authorized and empowered for that purpose by the plaintiffs, for their use in full satisfaction and discharge of all damages by reason or means of any clause, matter or thing, in the said condition of the said writing obligatory specified.

15. That if the plaintiffs have sustained any damages by reason of any checks or drafts, made or drawn by Aaron Ogden, or by his authority for him, on the cashier of the said State Bank for certain sums of money therein mentioned which were received by the said E. B. D., cashier as aforesaid, and held for the use of the plaintiffs, after the making of the said writing obligatory and condition thereof, and before the commencement of this suit, the said Aaron Ogden at the time the said checks or drafts respectively were drawn and received as aforesaid, being the President of said Bank, and authorizing the said cashier to receive the same as aforesaid, it was and is occasioned by an agreement or

understanding made between the said Aaron Ogden and
L. B., C. H. and J. W., Directors of the said Bank, author-
ized and empowered for that purpose by the plaintiffs, or by
them approved of after they had notice of the manner in
which the said checks or drafts had been received, and held
as aforesaid, that the said Aaron Ogden, should be liable
and chargeable to the plaintiffs for the said checks or drafts,
and the moneys therein mentioned, amounting in the whole
to a large sum of money, to wit: the sum of twenty thou-
sand dollars, and give security as well for the payment
thereof, as for the payment of certain other sums of money
owing from the said Aaron Ogden to the plaintiffs, amount-
ing in the whole to another large sum of money, to wit: the
sum of ten thousand dollars, for which they had no satis-
factory security. And that the said Aaron Ogden might
resort to the said E. B. D. and receive payment and satis-
faction for sundry sums of money received by the said E.
B. D. and for the said A. O., and then due and owing to
him from the said E. B. D., amounting in the whole to a
large sum of money, to wit: the sum of ten thousand
dollars; that the said agreement was to be kept a secret
from the public. And further, that the said A. O. was
charged in the books of the plaintiffs with the said checks
or drafts, and in pursuance of the said agreement, after-
wards the said A. O. did convey, transfer or hypothecate
certain real and personal property of the value of forty
thousand dollars to the said L. B., C. H. and J. W., in trust
for the plaintiffs as security for the debts due from the said
A. O., and which might become due and owing from the
said A. O. to the plaintiffs by note, check or otherwise,
which included the checks or drafts hereinbefore referred
to; and which said property so conveyed and transferred or
hypothecated was accepted and taken in trust as aforesaid,
by the said L. B., C. H. and J. W., authorized and empow-
ered for that purpose by the plaintiffs or approved of by
them as an ample security for the moneys due as aforesaid,

from the said A. O., to the plaintiffs; and further that the said E. B. D., after notice of the said agreement and of security being given by the said A. O., as aforesaid, for the payment of the said checks or drafts, and the moneys therein mentioned, did pay or secure to be paid to the said A. O. the said moneys due to him from the said E. B. D., as aforesaid, he, the said E. B. D., then' or at any other time before making the said payment or giving security to the said A. O., having no notice from the plaintiffs that he was liable to the plaintiffs or charged or chargeable by them for the said checks or drafts, and the moneys therein mentioned or any damages arising therefrom in any way whatever. And further, that the said E. B. D., always since the making of the said writing obligatory in all other respects, did well and truly observe, perform, fulfill and keep all and singular the matters and things in the said condition mentioned, according to the true intent and meaning thereof; and by reason of the premises that the said defendant as one of the sureties of the said E. B. D. was and is exonerated and discharged of and from all liability to the plaintiffs by reason of the said writing obligatory.

16. That the said defendant signed the said writing obligatory and condition thereof, as one of the sureties of the said E. B. D., and that afterwards and before the commencement of this suit, to wit: in 1818, the said E. B. D. did render a just and true account to the President and Board of Directors for the time being, and at their request, of all moneys, securities, stock and other property of the said President, Directors and Company, which had come to his hands or was committed to his charge as cashier as aforesaid, and also of all moneys which were deposited in the said State Bank by any person or persons for safe keeping. And that among the said money, securities, stock and other property, were several checks or drafts drawn on the cashier of the State Bank at Elizabeth by Aaron Ogden, and by his authority for him, (he then being President of the said

Bank,) for the payment of sundry sums of money therein specified, amounting in the whole to the sum of ten thousand dollars, wh'ch checks or drafts had been received as aforesaid by the orders of the said President; and the said Aaron Ogden was then and there answerable to the plaintiffs for the same, and which checks or drafts were then and there accepted and taken by the plaintiffs as part of and for so much of the said moneys, securities, stock and other property of the said President, Directors and Company, which had come to the hands or been committed to the charge of the said E. B. D., as cashier as aforesaid, and were then and there accounted part of and together with the other moneys, securities, stock and other property of the said President, &c., &c., in the hands of the said E. B. D., as cashier as aforesaid, were accounted in full of all the moneys, securities, stock and other property of the said President. &c., &c., which had come to the hands or been committed to the charge of the said E. B. D., as cashier. And that afterwards on the same day, an account was had and stated between the plaintiffs and the said Aaron Ogden, of and concerning the said several sums of money due and owing to them from him in the said checks or drafts mentioned, and divers other sums of money then owing from him to them, and the said Aaron Ogden, was then and there found in arrear and indebted to the plaintiffs in the sum of twenty thousand dollars; and that afterwards the said Aaron Ogden, made and sealed, and as his act and deed delivered to the plaintiffs his certain writing obligatory for the payment at a certain time then to come of the said several sums of money in the said checks or drafts specified, and other moneys owing from the said Aaron Ogden to the plaintiffs as aforesaid, which writing obligatory was accepted and received by the said plaintiffs, and is not in the power of the said William to produce the same here in Court, and that if the plaintiffs by reason of the premises have sustained any damages the said William as one of the sureties

of the said E. B. D., was and is wholly exonerated and discharged therefrom. And that the said E. B. D., in all other respects did well and truly observe, fulfill and keep all and singular the matters and things in the said condition mentioned according to the true intent and meaning thereof.

17. That he as one of the sureties of the said E. B. D., signed the writing obligatory and condition thereof, and that at the time of making the said writing obligatory and condition, and during all the time the said E. B. D., was cashier of the State Bank at Elizabeth, the rules and regulations of the said State Bank authorized and required the plaintiffs from time to time to appoint a committee of their directors to examine the cash and accounts in the hands of the said said E. B. D., as cashier aforesaid; and that the plaintiffs did from time to time appoint such committee for the purposes aforesaid, which committee with reasonable diligence, care and attention might, could and ought to have discovered any breach or breaches of the said condition by the said E. B. D., as cashier, if any such there was or were; and that after the making the said writing obligatory and condition thereof, and before the commencement of this suit, and before the said E. B. D., left the said office of cashier, and after notice of the manner in which the said cash and accounts had been kept by the said E. B. D., to wit: on the first day of May, 1818, the said committee did make their report in writing to the plaintiffs, of and concerning the said cash and accounts, thereby admitting and acknowledging all the matters and things in the said condition of the said writing obligatory specified, relating to the said cash and accounts, were well and truly performed and kept by the said E. B. D., to the time of making such report, which report the plaintiffs after like notice as aforesaid, and after they knew all the improper appropriations of the said E. B. D., accepted and approved of. And that in all other respects before that time, the said E. B. D., did well and truly observe, perform, fulfil and keep the matters and things in

the said condition mentioned according to the true intent and meaning thereof, and by reason of the premises the said defendant was and is exonerated and discharged from all liability to the plaintiffs, for or by reason of the said writing obligatory.

18. That after the making of the said writing obligatory and condition thereof, and before the commencement of this suit, that E. B. D., therein mentioned, had in his hands as cashier of the said Bank, certain checks or drafts received by him in the course of business as cashier of said Bank, for and on behalf of the plaintiffs and by their orders or by the orders of the said Aaron Ogden, drawn on the cashier of said Bank by Aaron Ogden or by his authority for him, for sundry sums of money in the said checks or drafts specified, amounting in the whole to a large sum of money, to wit: the sum of twenty thousand dollars; and that at the time the said checks or drafts were drawn and received as aforesaid, the said Aaron Ogden was President of the said Bank; and which said checks or drafts were held as cash by the said E. B. D., and that the plaintiffs after notice of the manner in which the said checks had been received and were held as aforesaid, without making any demand for payment of the said checks or drafts from the said E. B. D., and without any notice to him that he was liable or to be charged or held chargeable for the same, ratified and confirmed the acts of the said E. B. D., as cashier as aforesaid, in receiving and holding the said checks or drafts as aforesaid, and by reason of the premises, the said defendant then and there became and was exonerated and discharged of and from all liability to the plaintiffs occasioned by the said E. B. D., as cashier as aforesaid, receiving and holding the said checks or drafts as aforesaid. And further, that in all other respects the said E. B. D. hath well and truly performed and kept all and singular the matters and things in the said condition contained according to the true intent and meaning thereof.

19. That the said E. B. D. had in his hands as cashier, certain checks or drafts, and held the same as the moneys or securities of the plaintiffs made or drawn on the cashier of the said Bank by A. O. and held as aforesaid by his orders, he then being President of the said Bank, for the payment of certain sums of money mentioned in each of the said checks or drafts, amounting to forty thousand dollars. And that the plaintiffs after notice of the manner in which the said checks or drafts were held by the said E. B. D. and without making any demand on the said E. B. D. for the payment of the said checks or drafts or moneys therein mentioned, and without notice to him that he was held liable or answerable therefor, in any manner whatever, afterwards accepted the said checks or drafts, and approved of the said E. B. D., cashier as aforesaid, holding the same as aforesaid, and made and entered into an agreement with the said A. O., as their debtor for securing the moneys owing to them from him for the said checks or drafts, and other moneys owing to them from him amounting to another large sum of money, to wit : the sum of other ten thousand dollars, for which they had no satisfactory security, and afterwards accepted and received security for the payment of the said moneys from the said A. O., who conveyed, transferred or hypothecated certain real and personal property of great value, to wit : of the value of forty thousand dollars, and that afterwards in pursuance of another agreement made between the plaintiffs and the said A. O., relating to the moneys owing to them from the said A. O., and which included the said checks or drafts with other moneys owing from him to them, and also relating to the said property before that time conveyed, transferred or hypothecated by the said A. O., to secure the said moneys, and at their special instance and request, and as a further security for the said moneys, he the said A. O., to wit : on the fifth day of December, in the year of our Lord eighteen hundred and eighteen, by a certain deed of conveyance, bearing date the

State Bank at Elizabeth *v.* Chetwood.

day and year last aforesaid, did grant and convey certain real estate, situate in the township of Elizabeth, called the old and new-point property with the appurtenances, and also another tract of land called De Harts point, not before conveyed in any manner, to J. W., P. K., and J. B., Directors of the said State Bank, authorized and empowered for the purpose by the plaintiffs, to have and to hold to the said J. W., P. K., and J. B., upon several trusts in the said deed mentioned, and among others to secure the plaintiffs, the said moneys owing to them from the said Aaron Ogden, upon condition, however, that no sale or conveyance of the premises therein mentioned, should be made by the said J. W., P. K., and J. B., unless some part or parcel of the debt or debts therein before mentioned, and which included the debts due to the plaintiffs from the said A. O., by reason of the said checks or drafts, should remain unpaid at the expiration of the two years from the date of the said deed, and that until such sale be made, the said Aaron Ogden was to occupy and possess the premises in the manner therein mentioned without account, as will appear by reference to the said deed of conveyance in the possession of the plaintiffs or their said agents or trustees, and, therefore, the said William cannot produce the same here in Court. And that the said E. B. D., in all other respects, hath always since the making of the said writing obligatory, well and truly performed the condition thereof.

20. That if the plaintiffs have sustained any damage by the non-performance of the condition of the said writing obligatory, by the said E. B. D., by reason of the said checks or drafts of the said A. O., it was occasioned by their not removing the said E. B. D., from the said office of cashier, when such damage was first discovered, and by continuing him in office for the space of three months thereafter, thereby admitting and allowing that he had well and honestly and faithfully performed all the duties of said office of cashier, and in all respects performed the condition of the

said bond, and by afterwards permitting and allowing the said E. B. D. to withdraw from the said Bank the sum of one thousand dollars, and by allowing him to apply and appropriate the same and his other property to the payment and satisfaction of other demands, and also by not demanding or obtaining from him satisfaction for such damage while he was solvent and able and willing to pay and satisfy the same. And that he is now insolvent and unable to pay and satisfy the same; and also, by taking insufficient security from the said A. O. for the said checks, when more security might have been obtained; and by delay and neglect in selling the property taken as such security and by selling large parts thereof for cash; and also, by neglecting to give a proper credit for the same; and also, by selling other large parts upon unusual terms; and also, by not selling the said property sooner, and before the same fell in value and became injured by neglect; and by giving the said A. O. further time to pay the said checks or drafts; and also, by not taking possession of the said property; and also, by still neglecting to sell parts of the said property.

21. That the plaintiffs neglected to appoint a committee to examine the cash and accounts in the hands of the said E. B. D., as cashier as aforesaid, as often as their rules required, and that the committee when appointed, examined the said cash and accounts carelessly and unskillfully, and also were grossly negligent in performing their duty; and also, that the said committee did from time to time make their reports to the plaintiffs, that the said E. B. D., as Cashier, had performed all the duties of his said office, which reports were accepted and approved of by the plaintiffs.

22. That the plaintiffs gave notice to the defendant of their agreements and settlements with the said A. O., respecting his said checks or drafts, and of the securities received by them and from him, also herein before mentioned, and that the plaintiffs did not give due notice to the said defendant of any damage, if any has been sustained by them, by the said E. B. D., Cashier as aforesaid.

23. And the said defendant will further give in evidence, under the general issue above pleaded, the several special matters hereinbefore mentioned, as he shall be able and think necessary to prove on the trial of this cause, in such other order and connection as he shall be advised by his counsel; and also, that he is not, if at all answerable to the plaintiffs, otherwise answerable than as a surety for the said E. B. D.; which said several special matters the said defendant intends to give in evidence under the general issue, pleaded in this cause on the trial thereof, or such of them as he shall be able and advised to prove in bar of the plaintiffs' said action in pursuance of the statute in such case made and provided.

At the term of May, 1824, the counsel for the plaintiffs moved the court to strike out the whole of the notices attached to the defendant's pleas.

*Wood* for the plaintiffs in support of the motion. The defendant may either plead specially or he may under the statute "*to facilitate pleadings,*" *Rev. Laws*, 403, plead the general issue and give notice of any special matter intended to be given in evidence; but he cannot adopt both of these methods. The defendant in this case has set forth in his pleas every matter upon which he thinks he can rely, and those things which cannot fairly be pleaded he has put into the form of notices, *ad captandum.*

But the whole of the subject matter of these notices is inadmissible.

The first notice is, that E. B. D. is not Cashier. This is objectionable, because when the defendant pleads special matter, he cannot give in evidence anything which amounts to the general issue; a special plea admits the cause of action and avoids it by special matter; besides the defendant after setting out the bond in his plea, reciting that E. B. D. was "Cashier of the State Bank at Elizabeth," is now estopped from denying it. 4 *Com. Dig. Tit. Estoppel* 77, *A.*; 2 *Stephens on Plead.* 412.

State Bank at Elizabeth *v.* Chetwood.

2. Notice—"That the cashier did not take the oath required by the statute." This notice contains no substantial matter of defence to the action, and although a notice need not contain all the *formal* matters of plea, it ought contain every matter of substance which would be required in a plea. If the statute in this case required the cashier to take an oath faithfully to discharge his trust, it was a duty which he was bound to perform, but it was no part of his appointment; and if he has failed in the performance of one part of his duty, it is no reason why he should be excused for the violation of another part. Again, if E. B. D. was not sworn, he was not cashier. But the defendant has admitted him to be cashier by his plea, and, therefore, cannot now be permitted to gainsay that fact.

3. The third notice is, " that the bond was not required by the plaintiffs, pursuant to the statute." This is not true in point of fact, for that the bond was required is manifest from the plaintiff's having the bond in their possession, and bringing this action upon it. But the bond may be good although not *required*, and if so, the fact that it was not required forms no defence; a voluntary bond would be good, if it were competent for the cashier to give, and for the Bank to receive it. It constitutes no defence to say that the Bank did not require it. If it is said that the bond does not conform to the statute, the difference should have been pointed out in the notice, and without it the notice is insufficient.

4th Notice—"That the bond was not delivered." If it was not delivered it is no bond, and it may be taken advantage of under the general issue without any notice. Nothing can be the subject of a notice except what might or ought to be specially pleaded, and nothing can be specially pleaded which amounts to the general issue. *Stephens on Plead.*, 412, *Rev. Laws* 404.

5th Notice—"That the bond was delivered to E. B. D., as an escrow." But the delivery of a bond as an escrow must be to a stranger, and not to the obligee or one of the

co-obligors. This bond being given to E. B. D., one of the co-obligors, could not have been delivered as an escrow. 1 *Esp. Dig. part 2d,* 58 ; *Shep. Touch.* 58 ; *Cro. Eliz.* 520 ; *Com. Dig.* 65, *a.*

6th Notice—"That the bond was never approved of by the plaintiffs while E. B. D., was Cashier." This notice proceeds upon the idea that it should appear by the records of the corporation, that this bond was received, accepted and approved. If this is necessary, then it must be shewn by the plaintiffs on the trial, and surely a defendant can never plead specially matter which it is incumbent on a plaintiff . to prove in order to make out his case. But the very fact of the plaintiffs suing upon the bond is sufficient to show that they approved of it. A parol acceptance of a bond by a corporation is good; the ancient doctrine that a corporation could only act by a common seal has been exploded, and now, they may act without seal, and may even be bound by an implied contract. 7 *Cranch.* 306.

7th Notice—"That the plaintiffs were the occasion of the injury. This notice is entirely too vague and uncertain. It does not show how the plaintiffs were the occasion of the injury; it sets up no fact nor any legal matter.

8th Notice, is nearly the same as the preceding, and is liable to the same objections.

9th Notice—"That the injury was through the mistake of the Cashier and not from want of fidelity."

1. This notice is liable to the same objections as the two preceding. 2. It is perfectly immaterial how he has violated the bond, whether from nonfeasance or misfeasance, the defendant is equally liable. 3. The provisions of the bond shew that the parties contemplated a nonfeasance as well as a misfeasance, (see the condition of bond.)

10th Notice—"That the plaintiffs have not been damnified." This is too vague and uncertain.

11th Notice—"That the Cashier resigned his office and delivered to the committee the documents, &c., &c., in full

satisfaction of the damages they had sustained." This is the same in substance as the matter set up in the fourth special plea. The plea states the documents to have been delivered to the plaintiffs themselves, and the notice states the delivery to the committee of the plaintiffs; and having been pleaded, it cannot be again set up in a notice. This was decided in the case of *Chew* and *Egbert.*

But the defence is had, even if it had not been contained in the special plea. The performance of part of a person's duty, cannot be pleaded as a satisfaction or in discharge of an action for not doing other duties or the whole of the duties of the person pleading it. 1 *Esp. Di.* 67, *Part* 2*d ;* 5 *Coke. Re.* 119. *Pinnel's case.*

12th Notice—"That the Cashier *left* the office and delivered to the committee all documents," &c., &c.

This notice is liable of the same objections as the preceding.

13th and 14th Notices, the same in substance as the 11th and 12th, and there open to the same objections.

15th Notice—Is bad, because it is entirely hypothetical.

But the circumstance of A. O., being President, and authorizing the cashier to take the money out of the Bank, or pay it upon the checks or drafts of the President, will not excuse the cashier. The Bank is not bound by the acts of the President; the act of the majority of the directors can alone bind the Bank.

Again, A. O., the President, was liable to the Bank for the money obtained upon the checks or drafts, the Bank was therefore authorized to enter into an agreement with him to take a collateral security. His liability was separate and distinct from that of the cashier, and nothing short of an actual satisfaction of the demand, by one will discharge the other. There was no relation of surety and principal between the cashier and the President, A. O. 3 *Wheat. Re.* 520.

16. This notice is in substance pretty much the same as the preceding. If the plaintiffs did accept a bond from the said A. O. for the amount of the checks or drafts, they did not thereby discharge the bond which the Cashier had given. Although it might be true that A. O. could not afterwards be sued in assumpsit on the checks, yet the distinct liability of the Cashier was not diminished. 1*st Esp. Di., Part* 2*d, page* 67.

17. The amount of this notice is, that there was a committee appointed to examine the accounts of bank, and that they reported that they were all right. And the argument intended to be drawn from this, is, that because the Cashier was so adroit, and concealed the matter so nicely, that the committee reported in his favor, that therefore he is to be discharged.

18. That E. B. D. had the checks of A. O. in his hands, and the plaintiffs by receiving them from him ratified his acts. But how did E. B. D. receive these checks? He received them as Cashier; wrongfully it is true, but the bank was entitled to them, and their receiving them of him, could not discharge him. The checks did not belong to E. B. D., and delivering them up was no more than an act of duty.

19. The same answer may be given to this notice as to the preceding; and besides, any delay which the bank extended to A. O. could not affect the liability of the Cashier, because the relation of principal and surety did not exist between them. 3*d Wheat Re.* 520.

20. Notice. (Read the notice.) 1st. This is bad because the bank were not bound to remove the Cashier, and if they did not it is not in their power to set up such a defence. 2d. As to the Cashier drawing money out of the bank, which he had deposited there, this does not discharge him or his surety. 3d. As to the not prosecuting the Cashier, I admit that if any benefit is to be derived from it the defendant is entitled to it. But a mere delay in not prosecuting a

principal will not discharge a surety; unless there is a delay by contract, or a fraudulent concealment, the surety is not discharged. 10*th East.* 34, *ib.* 369; 2*d John. Ch.* 559, *King* vs. *Baldwin*; also *Shotwell* vs. *Manning*, 2*d South.* 584.

21. Notice is, 1st, " That the bank neglected to appoint committees to examine the accounts of the Cashier as often as they might, and 2d, That the committees reported favorably." But there is no charge of fraud in the committee, and unless there is fraud the surety is not discharged.

22. Notice is, " That the plaintiffs gave notice of the settlement with A. O., but did not at the same time give notice to the defendant of their having sustained any damage." But how can the not giving the defendant notice of the damage sustained affect him? The bringing the suit is a sufficient notice and all that the law requires.

23. This notice is superfluous, because we do not pretend that the defendant is answerable otherwise than as surety.

*Frelinghuysen Atty. Gen.* and *Van Arsdale, contra.* The counsel for the defendant feeling as well the solicitude of friendship as the obligation of professional duty, have spread upon the record everything which they supposed might conduce to his defence. These notices present many very important questions. As preliminary to the discussion of each notice separately, it may be proper to observe, that many of the doctrines relative to the matters contained in these notices, notices have been adopted from the courts of equity, and courts of law have been liberal in allowing and construing them. The statute to facilitate pleading does not say that you cannot plead specially and give notice also; it only introduces a new and cumulative remedy. As to the form of these notices, they need not be as precise and particular as a special plea; it is sufficient if they contain such a statement of the special matter to be given in evidence at the trial, as may prevent the plaintiff from being taken by surprise. *Chamberlain* vs. *Gorham*, 20 *John.* 746. And

in a complicated case the court will not interfere with them. 1 *John. Cas.* 152, *Thayer* vs. *Rogers.* They contended that the notices were all good, and as to the

1st Notice, They denied that they were estopped from saying that E. B. D. was not cashier. Cited *Yelv.* 25.

2d Notice. That the bond was given for the performance of the duty of an officer properly inducted into office, and if the officer never was properly inducted the bond is void. 2 *John. Ch.* 562. This oath is considered as a great moral security, and the surety had a right to suppose it would have been required. See act of incorporation, sec. 15 and 31.

3d Notice. Under this notice we propose to give evidence that this bond was never required by the Board of Directors, nor asked for. If the bond is to be taken under the act creating the bank, (See 31st sec. of the stat.) it must be taken in pursuance of the act or else it is void. 1 *Penn.* 120.

4th Notice—It is said that we may give this in evidence under the general issue; if the Court is of that opinion, we have no objection to its being struck out. It was put in *ex abundanti cautela.* If it could not have been given in evidence under the general issue, and we had omitted to give notice, it would have been a fatal neglect on our part.

5th Notice—The objection to this notice is, that the bond could not have been delivered as an escrow, but the authority cited from *Shepard's Touch.* does not meet this case. Here it was not delivered to the obligee as an escrow, but to E. B. D., to be kept until approved and accepted by the plaintiffs.

6th Notice—This bond ought to have been accepted and approved, and some entry of such acceptance entered on the record or minutes of the corporation. The execution of a bond to a corporation, stands upon different grounds from the execution of a bond to an individual. As to individuals, proof of the hand writing and sealing is sufficient evidence to go to the jury as proof of delivery. But as to corpora-

State Bank at Elizabeth v. Chetwood.

tions this is not sufficient, it must be approved and the approval entered upon the record or minutes of the corporation. 2 *Bac. abr.* 13, *let. E.* Opinion of *Marshall* in the case of the *bank* of the *U. S. vs. Davidge,* cited from "Times" newspaper of June 10th, 1823.

7th and 8th Notices—The objection to these notices is, that they are too general. But we find similar pleas in 1 *Hen. Blac.* 253, and 2 *Wils.* 126. In 10 *John.* 271 there is also a plea of non-damnificatus and it was held good.

9th Notice—We insist that this bond was given merely for general good conduct, and that a mistake committed by the cashier will not forfeit the bond. 10 *John.* 271, the *Union Bank vs. Clossey.*

10th Notice—The same nearly as the preceding.

11th Notice—The objection to this notice is, that it only shews the performance of part of the cashier's duty, and that performance of a part of a person's duty, or payment of a part of a debt cannot be pleaded as satisfaction for the whole even if so received; but it may be pleaded by way of satisfaction, and the way of pleading an accord now, is to plead it by way of satisfaction and not by way of accord. In *Peytoe's case,* 1 *Coke* 80, this is stated to be the best way. See 16th *John.* 86. 2d *John. Re.* 345. 5th *ib.* 386. 20th *ib.* 76. 11th *East* 390.

12th Notice—This stands upon the same footing as the preceding, and is supported by the same argument.

13th Notice—This is in substance the same as the 11th and 12th, and may be supported upon the same grounds. The condition of the bond is, that the cashier must deliver the papers and documents to his successor. But in this notice it is stated that he delivered them to the plaintiffs; now this delivery is good, and is a saving of the condition of the bond and may be pleaded as an accord and satisfaction.

14th Notice—This rests upon the same reasoning as the preceding.

15th Notice—It is objected to this notice that it is hypothetical; but if it turns out not to be the fact it can do the plaintiffs no injury. The Court will recollect that we first attempted to compel the plaintiffs to assign breaches in their declaration (2d *Halst. Re.* 32), then we applied for a bill of particulars which was refused, and we are now compelled to resort to this method of notice. We contend that when the committee of the Bank discovered the situation in which the affairs of the Bank stood, that they should have looked immediately either to A. O. or to the cashier; that having entered into arrangements with A. O., they made their election to proceed against him and cannot now resort to the surety of the cashier or the cashier himself. 4 *John. Re.* 473; 3 *John. Ch.* 23; *Willis* 407; *Co. Lit.* 212–13; 1 *Cruise Di.* 282, *Sec.* 32. Besides the agreement with A. O. to give him time for two years, releases the defendant. 2 *Vez. Jr.* 542; 2 *Br. Ch.* 579; 3 *Atk.* 91.

16th Notice is the same in substance as the preceding, and may be supported on the same grounds. We insist that the acceptance of the bond from A. O. for the amount of the drafts, discharged the cashier and his sureties from all liability on their bond. 2 *John. Cases* 195; *Yelv.* 39–40; 1 *Bay. Re.* 112; 6 *Cranch.* 264; 3 *East.* 254; *Tac. Law Dic. Lac. Extinguishment.*

17th Notice—This may be supported by the same arguments on which the second notice is maintained, viz: that if the plaintiffs neglect to perform what they are bound to do, the sureties may avail themselves of it.

18th Notice—This they contend was good, because checks were in a certain sense considered as cash. 3 *John. Ca.* 9. And whenever the directors by receiving them adopt them as such, they can never call upon the cashier and make him liable for them. They might have refused to take them of the cashier as money and called upon him to pay them. But when they received them of the cashier as cash, they ratify his act. 1 *Cain. Re.* 536.

The mere fact of paying a check without funds is not per se a breach of the condition of the cashier's bond ; but if the directors refuse to receive the check they may make it such. When a principal, with a knowledge of the acts of the agent, adopts his act, he shall not afterwards consider him as guilty of a breach of duty.   12 *John.* 300.   8 *Wheat.* 363.   Here the directors received these checks from the cashier as evidences of debt accounted with him for them.   They did not, at that time, look to the cashier or his sureties for the payment of them ; but they looked to A. O., and demanded the amount of him.   It is precisely like the case of a note— Suppose the cashier had let an individual have money out of the bank upon his promissory note without the consent of the directors; this he had no right to do—but suppose that afterwards the directors accept this note and approve of it; can they afterwards, if the drawer of the note should fail, resort to the cashier for a breach of duty ?   Certainly not.

19th Notice—As to this, it was said that the cashier and A. O. were not to be considered in the light of principal and surety; but the distinction taken by the plaintiffs' counsel was more subtle than solid; if the cashier is liable, A. O. is also—it is all one transaction.   The case cited by the plaintiffs' counsel from 10 *East.* 34.   *The Trent Navigation Company* v. *Harley,* is a solitary one, and one which carries the indulgence to the principal farther than it was ever carried before, and farther than the law will warrant.   An extension of time to the principal without the consent of the surety will discharge the surety.   13 *John Re.* 174.   *Pain* v. *Packard ;* 10 *John.* 597.   *Rathbone* v. *Warren ;* 17 *ib. King* v. *Baldwin ;* 2 *B. and Pul.* 62 *English* v. *Darley ;* 7 *John.* 332.   *The People* v. *Janson.*

20th Notice—In support of this notice the counsel cited the case of *Kirk* v. *Hodgson* and others; 3 *John. Ch. Re.* 400.

State Bank at Elizabeth v. Chetwood.

21st Notice—It was the duty of the plaintiffs to appoint a committee to examine the accounts of the bank, and the surety had a right to expect and rely that this would be done, and that the committee would make a strict examination of the accounts. 2 *John. Ch.* 562. Suppose we produce the report of this committee, stating that the cash account and debt account of the cashier agree, would they afterwards come upon him?

*Ewing* replied.

*Cur. ad. vult.*

The opinion of the court was delivered by FORD, Justice.

FORD, J. To an action of debt on bond the defendant craves oyer of the condition, and then pleads the general issue together with four special pleas in bar; and gives notice of twenty-three *other* matters, which are not specially pleaded, that he intends to offer in evidence under the general issue. It has been decided that the same matter cannot be presented in the double form of a special plea, and also of notice; but in this case the matters appear to be so different that no two of them are alike, and there is an option in respect to each matter, to plead it at the common law, or give notice of it under the general issue; either way being lawful cannot be prohibited by the Court.

The plaintiffs' next motion is to strike out all the notices, because of an insufficiency alleged to be apparent in each one, which renders a detailed consideration of them unavoidable.

1. The defendant is certainly estopped from denying that *Dayton* was Cashier, after having recited in the bond under hand and seal that he was "Cashier of the State Bank at Elizabeth." There is no way to destroy this admission, but by denying the deed itself; he cannot admit the deed and at the same time traverse the truth of its contents.

2. A party may be bound to the performance of duties by

the double securities of an oath and a bond; but can it be pretended that the bond is void because the party *might* have sworn to perform it and did not? Can his not being sworn justify him in breaking the bond? If it was a duty incumbent on him to be sworn before he entered on the duties of his office, it was a breach of the condition not to be sworn; for the condition was to perform all the duties of Cashier; now to break the condition of a bond is what gives an action on it, but was never holden to bar one.

3. and 4. Notice—"That the bond was never delivered," amounts to the general issue, and could not be specially pleaded. If, without the previous formality of a requirement to give the bond, it was given according to the statute, the requirement must be so *implied in the giving* as to be no more traversable than an arrest after giving a bail bond.

5. A party *to* an instrument can never hold it as an escrow; and therefore a plea that the bond was delivered to one of the co-obligors to hold as an escrow is ill. But if it was never delivered to the plaintiffs, *that* may be shewn under the general issue.

6. There is a difference between the delivery of an instrument and the tender of one; in case of tender there may be no acceptance; but delivery necessarily implies the notion of acceptance. The case cited from the newspaper must have been governed by the provisions of some statute.

7. and 8. Set out no special matters.

9. That if the cashier erred, he did so by mistake and not for want of fidelity. In support of this defence a case is cited from 10 *John.* 271, where the condition of the bond was for *fidelity only;* but it cannot be applicable to a bond like the present which is for the performance of many specific acts at his peril, and duties appertaining to the office of cashier.

10. *Non damnificatus* cannot be specially pleaded to a condition that is multifarious, because the issue would be unintelligible alike to the parties, the court and the jury. I

am of opinion, therefore, that the first ten notices are insufficient and ought to be stricken out.

The 11th Notice is, that the cashier resigned his office to the plaintiffs, and delivered to an authorized committee of directors, all the property in his hands as cashier belonging to the plaintiffs, *in satisfaction of all damages* by reason of anything in the condition of the bond, and that the plaintiffs *accepted thereof in satisfaction.* An objection to this notice, that the matter in it is pleaded in the fourth special plea does not appear to be founded in fact; in the plea, the delivery is to the company, and in the notice, it is to an authorized committee; so that instead of being identical, they are diverse enough for two special pleas. The other objection is, that performance of some of the things he was bound to do, cannot be pleaded in satisfaction of the whole; as in *Pinnel's case*, 5 *Co.* 117, where payment and acceptance of £5 was holden to be no good satisfaction for £8; the reason assigned, being, that five can by no possibility be satisfaction for eight; yet in 2 *Term Rep.* 24, *Ashurst* and *Buller*, Justices say, that an agreement to take part in nudum pactum *unless afterwards accepted;* clearly implying that if it be no longer executory but executed, acceptance of part in satisfaction of the whole is a good accord. But be this as it may, the case before us is different; the cashier pleads that what he did was not a part of what he was bound by the bond to do, but they were *other things;* he resigned his office in satisfaction, and that he was not bound to do; he made delivery to a *committee,* when the bond bound him to deliver only to his *successor.* Now, though according to *Pinnel's* case, a *less sum* (of money) could not be in satisfaction of a *greater;* yet it was determined in that case, that any *other thing,* such as a horse, or a hawk, delivered and accepted in satisfaction, would be good. Injured parties, have a right to accept anything that they please to take in satisfaction; they might accept of resignation alone if they pleased; the law would not prevent them; and the

question of their having done so or not, must be left to the jury. I do not think it necessary to go into the next three notices, because they depend on the same principle as the present, and therefore the 11th, 12th, 13th and 14th notices, ought to stand for trial.

The 15th Notice, supposes that the cashier applied the money of the Bank, to pay checks that were drawn on him by Aaron Ogden, for doing which, he had no other authority than that of the President; and as that was not plenary authority for making it an act of the Bank, he did not enter it on their books, but held it out of them as a transaction for which he himself was answerable to the Bank, and Aaron Ogden answerable only to him, unless the Bank, by some further order of their own, should see fit to take A. Ogden, (the drawer of the checks) for the money, as they had a right to do by accepting the checks and charging the money to him on the books of the Bank. That the Bank might fairly exercise their election, the cashier laid the whole matter before them; and it resulted in their agreement to make A. Ogden, answerable to the Bank; accordingly they accepted those checks from the hands of the cashier, and not only legalized his original appropriation of the money by directing it to be charged on their books to A. Ogden but actually bound A. Ogden, to themselves for the whole sum, by taking from him a bond and mortgage for the amount. Now, when A. Ogden, under this agreement, became liable for the money to the Bank, his prior liability to the Cashier necessarily terminated, otherwise his remaining liable to *both parties* would have amounted to a double charge for the same debt; and beside, the Cashier could not have maintained an action to recover this money in his own name, after a bond and mortgage had been given for it to the Bank, with the assent of all parties. In consequence of this settlement, the Cashier (with the knowledge of the Bank) proceeded to give up moneys that were *in his hands* belonging to A. Ogden, out of which he might have

redressed himself as Cashier for those advances, if the remedy he first had against A. Ogden, as receiver, had not been taken out of his hands. With these matters spread on the plea, as facts, it is not possible for the Court to over-rule them, and say that they amount to no defence. They must therefore stand for trial.

The 16th Notice is, that the checks were merged in the bond given for the amount of them, by Col. Ogden, to the Bank. Now, that they are extinguished as to him, may be true without varying the case of the Cashier, whose liability arises on the bond and not on the checks, which are collateral matter. The facts, *as set out* in this notice, cannot bar the action of the plaintiffs.

The 17th Notice is insufficient, because it does not allege that the directors *knew* of the Cashier's improper appropriations at the time they approved of his accounts.

The 18th Notice contains a direct averment that the plaintiffs ratified and confirmed the accounts of the Cashier, containing the checks that he had received of Col. Ogden for them, after they knew the manner in which they had been received. It is beyond all manner of doubt that the plaintiffs were competent in law to ratify and confirm the doing of their Cashier if they were so disposed; it must therefore go to the jury to determine whether the plaintiffs ratified the transaction or not. It will be open for them to contest the fact, or to shew that they had power, right or reason to retract the ratification, if ever it was made; if they shew none of these things, and the ratification is matter of fact, they surely cannot recover damages for an act that has received their approbation under a full knowledge of the circumstances.

The 19th allegation is, that the plaintiffs accepted these checks of the Cashier *as cash*, knowing the circumstances under which they had been received of the President, for the Bank. Now, when they accepted checks from their Cashier, and gave him credit for them *as cash*, if they

3

intended that the credit should not be absolute, but conditional, either they ought to have seen that the entry on their books was a qualified one, or else they ought to have notified the Cashier that they did not accept in the ordinary way as cash, but on condition that they could get the amount from Col. Ogden, or the security he had pledged for it; otherwise an unconditional acceptance of them as cash in the ordinary way and with a knowledge of all the circumstances, would be such a close of the affair between the Bank and their accounting officer, that they could not retract their settlement and resort to him afterwards in case the security failed. It is the province of a jury to determine upon the alleged acceptance of the checks as cash, and if they find it was so done at the time, and with a full knowledge of all the circumstances, it will be a good bar to their recovery.

The 20th Notice must be stricken out, because their continuing the Cashier ten months afterward in office did not, in law or reason, heal breaches of an anterior date. So, also, as to the 21st and 22d, for there is nothing in the condition of the bond that he was to be watched, nor any necessity for the plaintiffs to give notice when damages accrued, if the case be taken abstractly from attending circumstances.